15.305, 15.478, International Union of United Automobile, Aerospace, and Agricultural Good morning, your honors. I've reserved four minutes. May it please the court, I'm representing the petitioner, UAW Local 1700, who has filed a petition for review of NLRB's decision and order in which we are seeking to deny enforcement. In this case, the charging party, Aretha Powell, was fired for making a vile, vulgar threat that was a culmination of a series of escalating violent conduct at work. That the charging party was guilty is established and uncontroverted of all these violent acts. The board found, number one, that the union rightfully caused Powell's discharge for reporting the threat and by the union steward, Faircloth, submitting a statement about the threat. Because the union has a duty to all employees in the bargaining unit and a duty to protect the other employees from the violent conduct of Ms. Powell. The board also found that the union did not reach its duty of fair representation and properly declined to arbitrate the grievance, instead negotiating an eminently reasonable settlement, which took into account both Ms. Powell's interests and the interests of the bargaining unit, by making the settlement contingent upon an anger management class and a 90-day last chance agreement that there would be no more violence for the next 90 days. Then the board did an about-face, which is puzzling, finding that the union breached its duty of fair representation based on three findings considered cumulatively. One, that the Faircloth statement was partially untrue, even though that did not detract from the board's prior finding that the union rightfully caused Powell's discharge by that statement. Two, that Faircloth represented the grievant at a step one grievance meeting. And three, that Powell remained unaware of Faircloth's statement during the preceding dependency of the grievance. These three items the board explicitly said were taken, were considered cumulatively and considered together so that each one is a necessary predicate. If any one of those is knocked out, the board's conclusion- What do you think is the weakest link? That the statement was partially not true. That Faircloth, the ALJ and the board found that Faircloth truthfully reported what happened, but was not present in the room. And the ALJ relied on accredited testimony of Nate Hudson, who said that Faircloth was not present while he was in the room. And also, that while he was in the room, he did not hear Powell or Tanner, the victim of the threat, say anything to each other. Yet, the fact that the statement was made, this vile, vulgar threat, which I will not repeat in the courtroom, but is in the briefs, is uncontroverted, is established. So if Hudson wasn't there, he didn't hear that threat, how can he say that Faircloth wasn't there? The board also ignored- In fact, Hudson was sitting somewhere outside, right? Eventually he went outside. He was there, then he left. As he's leaving, Faircloth enters the room. He sees that, and then he sees a commotion inside, and then he sees Powell come out upset. None of this is considered by the ALJ or the board. And although- It rises to the level of not being a reasonable inference from the evidence. It's not substantial evidence. And the deference due the board does not include- It does not permit the board to ignore relevant evidence that detracts from its findings. Nor does it permit the board to miscontrol or fail to consider important evidence. That's what the board did here, and that's why its findings are not supported by substantial evidence and are not entitled to deference. We cited- If you're right, what do you think we should do? Should deny enforcement. Remand for further reconsideration, then? I don't think remand is necessary. I think the board's decision is not supported by substantial evidence,  Assuming that you're right on this point, are you going to address- I hope you are- sort of the parameters of what you understand the union's exercise of the duty of fair representation to entail in a situation like this where- Yes. Plainly, the employee who has been disciplined is at fault. A union representative is a witness and also an employee, so obviously that union representative has the duty to tell the truth, it would seem, to her employer about what happened. And just talk a little bit about the parameters of that kind of difficult situation. That's why the board's decision here, it's almost like a Dr. Jekyll and Mr. Hyde or split personalities. Like the first two findings don't- can't really be squared with the last finding, that the board- that the union rightfully caused this person to be discharged. And in part of that decision, the board is using a duty of fair representation analysis under 8B2, which prohibits causing discharge, but there's a DFR analysis as part of that. Usually, I've been involved in other cases like this, and usually what happens when there's violence at work, the union reps, nobody saw anything. They disappeared. They're not around because they don't want to be snitches. But in this case, that's not what happened, and the union does have a duty, or at least it's not a breach of its duty, to report violence. And that's established. I don't think anybody questions that. The board didn't even question it. What the board questioned was the failure to disclose, but- Ms. Powell, that Faircloth had snitched on her? Not without more evidence than there is in this case. There's no- if the- if she didn't do it out of intentional- she did it out of- to intentionally mislead, or out of intentional malice, or she did it for wholly irrational, like she just never thought of it. Well, that'd be a clear breach of the duty of fair representation, presumably. There's no evidence here, and it's the general counsel's burden of intentionally misleading conduct. There's no evidence to why we didn't tell her. Well, it seems like the board sort of thought, well, you know, there ought to be some duty of disclosure, similar to what a judge would have if a judge had personal knowledge from an external source about a case that came before that judge. Is that a fair reading, do you think? I think they're suggesting that, but there's not really any law to support that, and they don't cite any. All the cases where- Well, I'm going to ask them about that, too, but- All the cases involving the union misleading agreement involve much more egregious conduct than this. They involve, like, trying to sabotage a grievance by lying, intentionally not telling the grievance, something that the grievance needed in order to protect themselves. Here, what we can't overlook, also, is that given the finding that this grievance did commit these acts of violence, she was guilty. She knew she was guilty. And we have to conclude that she knew she was guilty, and we have to conclude that she was lying about the fact that she committed these acts. She lied to her employer. She lied to the union. Does it matter what area of representation? There's a question about when the union actually undertook representation of the grievance. Well, that's the second link, that the board found it particularly significant that Faircloth represented Powell at a Step 1 meeting. Now, I will concede that Faircloth represented Powell during Step 1 only by the simple act, ministerial act, of writing the grievance and handing it to the management person. And that was routine, and she did what she always does, was to write a grievance, asking for reinstatement, claiming unjust termination, and handing it to the that there's never a meeting at Step 1, there's never any discussion at Step 1. But the grievance is not present. The grievance is not present when there's a discharge. And it always goes to Step 2. And that Faircloth was gone after she did that. So all Faircloth, there's not any evidence that she was involved in any way in the, for lack of a better word, it seems inappropriate to call it adjudicatory, but, you know. That's right. It was not a discretionary, it was a ministerial task that she did when she wrote this grievance. And at Step 2, Davis was representing Powell, is that correct? Right. At Step 2, and Davis negotiated the settlement. And Davis did, he didn't disclose who made the statement, but he did disclose to Powell that others had given statements against her and they weren't in her favor, which also prompted another violent outburst by Powell. So even though there's no evidence, we can infer a rational reason why the union did not disclose that Powell had made this statement. I mean, that Faircloth had made this statement. Okay. Faircloth may have worried about retaliation against herself, like when Powell threatened her, somebody, $100, wanted to beat her up. Certainly. She had put a bounty of $100 on her head. You have your rebuttal time. Thank you. May it please the Court, Jared Cantor on behalf of the National Labor Relations Board. I want to first address the issue of Faircloth's presence. The board found that she was not present at the time that this was said. It did so via a credibility determination with Mr. Hudson. Well, the problem is not a credibility. There's nothing, I mean, in order, there's got to be a conflict between what happened and there's got to be a conflict for somebody to have occasion to assess credibility. I mean, what Mr. Hudson said is entirely consistent with Ms. Faircloth's being present. It's not inconsistent. Well, the testimony that Faircloth is present is from her and from Tanner. The testimony that she was not there is from Powell, Hudson, and two other witnesses who were there who do not list her as being there. They list who was there, they list each other. Were they asked for anything other than a statement? This is their testimony before the board. They were asked to list who was there. Who were those people? Those employees were Patrice Williams and Jacqueline Keys for Ms. Williams' appendix page 742 and Keys at 544. They were asked a neutral question to list who was there. And when they list who was there, they have Hudson there? They list who was there at the beginning of the event that came together or throughout the course of it. I think the concern about substantial evidence for me was that you have the testimony of Hudson, I think, who was leaving and says she's coming in. Well, she would therefore not have been present when the meeting was initiated. There's no question of that. When things had gone on and been completed, he leaves and passes her in the entryway to that location. And the commotion occurs after that? Afterwards. I'm struggling with assuming that a statement as to who was initially present gives you substantial evidence to say who came in and out, particularly since there's a reliance on testimony that doesn't seem to me to be a credibility issue. Well, I think, Your Honor, that's where it comes to the reasonable inferences from the evidence here. That when you look at all of the testimony of who was there and the various statements being said, that this was certainly not a long-duration incident. Regardless of, and I have tried myself and was never quite successful to do a timeline based on everyone's testimony of the chronology of who said what before Ms. Tanner said what she said to Ms. Powell, or what Ms. Powell said to Ms. Tanner, you have Hudson recalling the statements leading right up to when the threat was said. So whether he was there when the threat was said and simply didn't hear it and then left the room. No, his testimony, his testimony makes clear that he didn't witness the altercation. I mean, he says that. I left. He heard a commotion after he had left and was in the hall. And Ms. Faircloth, according to his testimony, was entering the room. And the only fair inference I can draw, I didn't mean to interrupt but the only fair inference I can draw from that is that Ms. Faircloth was in the room when the commotion occurred. The second fair inference could be that indeed, he was then leaving the room, he passed her right in the doorway, and then the commotion happened. So under that fair inference, Ms. Faircloth, according to him, has passed her. She's now in this room, but whether she is then actually witnessing it happen, if you look at the photos of the room, this is a long, somewhat industrial meeting. You're justifying a finding that she was false, based on testimony that supports her presence. Well, his testimony just supports that he passed her, that she went into the room. It does, Your Honor. I cannot dispute that that's what he testified to. So how does that provide substantial evidence that she lied when she said she was there, when he doesn't dispute that he might have been there? Well, the way I read the board's decision is that they're, and the presumption that they have looked at all the testimony here is that, as I was mentioning, the two inferences, that he was then there when the threat was said and then somehow left past her and then she passes her before she actually arrives at the site where the threat happens. I think what we're asking you is not what the board said, but what in the record might you be able to base that on that would cause us to find that it was supported by substantial evidence? Well, Your Honors, the board specifically relied on the credited testimony of Hudson on that first point. And as I mentioned earlier, and we do this in our brief, I point, and obviously Powell said she wasn't there. There are the two other witnesses who don't describe her as there. Yeah, but the ALJ relied solely on Hudson's testimony to reach that point. Yes, and Judge Gibbons was asking for anything else in the record. So those are what I can point to. The other witnesses who, one, didn't say there was a threat, but don't place Faircloth there. The fact, and then obviously Powell saying she wasn't there and then Hudson passing her as he was leaving. And the reasonable inferences that I can draw from that is either the threat was made and Hudson was still there and then Faircloth comes in or Hudson is removed from it. I don't know off the top of my head. The evidence assessment didn't read the rest of Hudson's testimony, because the rest of his testimony makes that clear. Well, I cannot, the presumption is, Your Honor, that all the, the ALJ obviously sat and heard him say this, and he's the one who made that determination that the board adopted. Yeah, despite the ALJ finding that it was partly false, it still ended up the ALJ found in favor of the union. It was the board that overruled the ALJ here, isn't it? Correct, Your Honor. It doesn't happen too often, does it? I can't speculate, Your Honor, based on my small sample size of years with the board, whether that is common or not. I will point out that, and the board obviously didn't say this, but we do note in our brief that to the extent that, assuming Arguendo, she was there, so then we then have Faircloth, who was a witness. So then her statement isn't false, but we still have her submitting an adverse statement as the only corroborating witness, as a union official, she submitted it. Well, what is a witness to an incident of this type, who's a union representative, but also an employee of the company? What is that person supposed to do? Well, Your Honor, the board specifically noted that this decision had unique circumstances and that were narrowly circumscribing the unfair labor practice. So to Your Honor's earlier questions to my brother at the bar, they found that it would not be an unfair labor practice merely for Faircloth to have submitted an adverse statement. The issue here is that we can see probably how the union should have acted with the knowledge that Faircloth was steward to begin the process. Well. What law do you have to back that up? Cite me a case that says that to not do that was unfair. Well, it's kind of. What's the precedent from the board or case law that supports that? Well, it's this decision here that having, and it's the three facts, that having Ms. Powell involved in this. No prior precedential authority from the board that would say that that's their law. Where did the board get the notion that this would violate the duty of fair representation other than out of its own head? Well, Your Honor, I think it looked at the three facts here. Make this up whole cloth. That's what we're trying. It's a new theory. I don't think, Your Honors, the council discusses this. I do not read this as the board espousing a new theory. It's looking at the incident that happened here and it's the union breached its duty of fair representation to Ms. Powell. Do you disagree with Mr. Canzano's characterization of what happens at step one? No, Your Honor. Without having his words exactly in front of me, if. So what danger to the integrity of the overall grievance proceedings, what danger was posed by Ms. Faircloth filling out the grievance and submitting it? Well, the way I read this is that, based on, again, the three facts, is that you have the only corrupt, essentially what was a she said, she said becomes. No, no. I'm not asking you what the board said. I'm asking you, as a policy matter, what harm to the integrity of the proceedings is occasioned that Ms. Faircloth's playing the role she played? Well, Your Honor, since the board didn't expressly address that in terms of a policy matter, it talked about it in the context of the other facts here, that you have an adverse witness being the one that initially is representing the grievance in front of the company. Ms. Faircloth had also previously, during the course of investigating this, had told Wall, the site manager, about all these other things that Ms. Faircloth was doing. And obviously, as he mentioned, it's general to characterize that there was some type of at the very first beginning of the commencement of the grievance proceedings, the person they have filling out and the person that they send to the company is the person saying she in fact did this. She didn't file a single-out form to initiate the process. She filed a grievance on behalf of Ms. Powell at step one. Yes, that is correct. And then Davis takes over to negotiate at step two, when they actually face-to-face negotiate with the company, right? Yes, that is correct. He comes up with what they thought was a reasonable settlement, and then Ms. Powell didn't accept that. I can't dispute any of it, that that's indeed what the board did find, that it was a reasonable settlement. Okay, so what's the problem? Well, the problem that the board found was that based on these three facts, that the union breach and studio fare representation, because Powell did, because of Ms. Faircloth's involvement and because of Ms. Powell's not being told about that. Okay, and where's your authority? Can you cite me a case that's under analogous circumstances and say, ah, this is a breach of the duty of fare representation? No, Your Honor, I'm not familiar that there's a specific case that lines up exactly with the unique facts here, and the board recognizes this. You can't tell us there's any precedent. You can't tell us what harm is occasioned by the integrity to the proceedings. I mean, what kind of, we give great deference to the NLRB, but it's hard to know how you can give deference to a decision that appears to be factually wrong, and two, you can't successfully answer either of the other two questions about the source of the obligation on the part of the union. Well, the source on the part of the obligation is to treat the grievance fairly, and so the board looked at these facts here and found that they were unfair. Did the board find that the written grievance form was inaccurate or inappropriate? It made no findings either way, Your Honor, to my recollection. That's the only action that Ms. Faircloth took was to complete the grievance form, and it was in fact the grievance form which was then processed and moved her grievance forward. Wouldn't it require some sort of allegation that there was an impropriety there, or do you think it's not? In certain circumstances, that might be a fact. That was not a fact that either was found here or that was present here. If any of the three facts upon which the board clearly says its entire decision is based, if any of the three of those are not substantially supported in the record, then the board's case fails, correct? Well, we do note in our brief that just because the first fact might be that in fact she was there, so she was a truthful witness but still an adverse, we do note that that doesn't necessarily mean the whole case fails. How can that if the board says we base this whole decision upon the three interrelated determinations that we have made, and if you pull one of the legs of that stool out, doesn't their decision fail? Well, my point would be, Your Honor, that just because the first fails doesn't mean that all the other ones fail, but indeed that the board expressly said that this was, to Your Honors, a three-legged stool and that to the extent that the court were to, for whatever reason, analysis, substantial evidence, knock out one of those legs and vacate the decision, then it would be up to the board to, again, I don't know exactly what the court would be saying in the decision, but if the court, if the problem was that it needed to be rebalanced, would two of these facts be enough to essentially issue a new decision? That would be for the board to decide. If the court's concerns were, board, please reevaluate this evidence or address this evidence that you didn't address and then reissue your decision. So under those type of circumstances where the court essentially is not finding that this is definitively foreclosed, the board would ask for the decision back. And lastly, to Judge Gibbons' point, the issue of harm here, which I think is going to essentially whether the grievance, the successfulness of the grievance was affected is an issue for compliance. So the harm is not part of the analysis. Really was not, it just seemed to me that the board might have considered what the practical impact of Ms. Faircloth's representation at step one was in terms of whether or not the union had breached its overall duty or not. It would seem to be something to consider. I think your time's up if there are no more questions. Okay, Mr. Kinzon. I think the court addressed most of the issues that I planned to issue on rebuttal. Just a couple points that the ALJ relied on Hudson as accredited testimony in support of his conclusion that Faircloth was not present during the incident. He did not rely on the other witnesses. He didn't say that. The board didn't say that. There were a lot of other witnesses whose testimony about what happened and what didn't happen is basically inconclusive. What specifically did Ms. Williams and is it Ms. Keyes, what specifically do they say? You know, I have to confess I'm not 100% positive, but I believe they said they didn't hear anything either. I believe they said they didn't hear anything either. But there was a different description of the banter that was going on back and forth. So that doesn't really prove that didn't happen. I thought they spoke to the presence of Ms. Faircloth according to Mr. Cantor. I just don't have that. Another significant point here is that the ALJ discredited Powell's testimony about what happened. She denied making the statement. He discredited that. Powell also said that Faircloth was not present. But the judge doesn't discredit that part. He doesn't say anything about that part. By the same token, on the other hand, the judge credits Tanner's testimony about the threat and he cites this entire five pages of transcript in support of that finding and included in that portion of the transcript is Tanner's testimony that Faircloth was present and the judge doesn't discredit that. So I think the judge and the board, you know, made errors in interpreting the record and that supports our contention that there's no substantial evidence. Basically what this decision would require is one, a strict liability theory that whenever something like this happens, there's no explanation. It's like dynamite. There's no explanation as to why there was no disclosure, whether it was for intentional or not. And there's no evidence, therefore, that it was in bad faith and there's no evidence that it was wholly irrational. That's the law that's declared by the Supreme Court and the Supreme Court is who makes the law on the duty of fair representation, not the NLRB. And there's a vast body of law already out there. Now perhaps, you know, in a perfect world, which the unions are not required to act perfectly in exercises of their duty of fair representation, Faircloth would have recused herself and had somebody else write the grievance. But it would have made no difference and that would impose a duty akin to the attorney-client relationship. As I argued in my brief, an attorney representing a guilty criminal commits malpractice if he considers the interests of the victims or the interests of society at large. But that's not what unions do and that's not what unions are supposed to do. They have to consider everyone's interests and that's what they did here. They did not breach their duty of fair representation. We would just ask that the decision not be enforced, enforcement be denied, and I believe that should be the end of it. Thank you. All right, we thank you both for your argument and we'll consider the case carefully. And I believe that's all the cases to be argued this morning and you may adjourn.